UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CHARLES B. GILL, SR.,

                              Plaintiff,

        v.                                        Case No. 17-cv-873-pp

BROWN COUNTY JAIL, HEIDI MICHEL,
J. MEKASH, BRIAN MEYERS,
IAN HIGGINS, and KAREN KONRAD,

                              Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED
WITHOUT PREPAYMENT OF THE FILING FEE (DKT. NO. 2) AND
SCREENING COMPLAINT**

        Plaintiff Charles B. Gill, Sr., who was confined at the Brown County Jail

during the time of the events he describes in his complaint, is representing

himself. He alleges that the defendants did not allow him to exercise his

religion correctly, and that they discriminated against him because of his faith.

Dkt. No. 1. This order resolves the plaintiff's motion for leave to proceed

without prepayment of the filing fee, dkt. no. 2, and screens the plaintiff's

complaint.

**I.      Motion to Proceed Without Prepaying the Filing Fee (Dkt. No. 2)**

        The Prison Litigation Reform Act applies to this case because the plaintiff

is incarcerated. 28 U.S.C. §1915. The law provides that a court can allow an

incarcerated plaintiff to proceed with his lawsuit without pre-paying the civil

case filing fee, as long as he meets certain conditions. Id. One of those

1

conditions is a requirement that the plaintiff pay an initial partial filing fee. 28 U.S.C. §1915(b). Once the plaintiff pays the initial partial filing fee, the court may allow the plaintiff to pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

The court assessed an initial partial filing fee of $24.51. Dkt. No. 7. The court received $25.00 from the plaintiff on August 22, 2017. The court will grant the plaintiff's motion for leave to proceed without prepayment of the filling fee and will allow the plaintiff to pay the balance of the $350.00 filing fee over time from his prisoner account, as described at the end of this order.

## II.     SCREENING OF PLAINTIFF'S COMPLAINT

### A.     Standard for Screening Complaints

The Prison Litigation Reform Act requires federal courts to screen complaints brought by prisoners seeking relief against a governmental entity, or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court may dismiss a case, or part of it, if the claims alleged are "frivolous or malicious," fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915(e)(2)(B).

To state a claim under the federal notice pleading system, the plaintiff must provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). The complaint need not plead specific facts, and need only provide "fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555

(2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)). "Labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not do. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Twombly</u>, 550 U.S. at 555).

The factual content of the complaint must allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> Indeed, allegations must "raise a right to relief above the speculative level." <u>Twombly</u>, 550 U.S. at 555. Factual allegations, when accepted as true, must state a claim that is "plausible on its face." <u>Iqbal</u>, 556 U.S. at 678.

Federal courts follow the two-step analysis in <u>Twombly</u> to determine whether a complaint states a claim. <u>Id.</u> at 679. First, the court determines whether the plaintiff's legal conclusions are supported by factual allegations. <u>Id.</u> Legal conclusions not supported by facts "are not entitled to the assumption of truth." <u>Id.</u> Second, the court determines whether the well-pleaded factual allegations "plausibly give rise to an entitlement to relief." <u>Id.</u>

To proceed on a claim that his civil rights were violated under 42 U.S.C. §1983, a plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the deprivation was visited upon him by a person or persons acting under color of state law. <u>Buchanan-Moore v. Cty. of Milwaukee</u>, 570 F.3d 824, 827 (7th Cir. 2009) (citing <u>Kramer v. Vill. of N. Fond du Lac</u>, 384 F.3d 856, 861 (7th Cir. 2004)); <u>see</u> <u>also</u> <u>Gomez v. Toledo</u>, 446 U.S. 635, 640 (1980). The court gives *pro se* allegations, "however

inartfully pleaded," a liberal construction. <u>See</u> <u>Erickson</u>, 551 U.S. at 94

(quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976)).

B.      Facts Alleged in the Complaint

The plaintiff is a member of the Muslim faith. Dkt. No. 1 at 3. He alleges

that during Ramadan, he was denied the right to practice his religion

"correctly." <u>Id.</u> The plaintiff says that on May 31, 2017, defendant Meyers told

him to pray in his cell. The plaintiff says that he has been Muslim for twenty-

three years, and that Islamic law forbids a person from praying next to a toilet.

<u>Id.</u> at 3-4. The plaintiff tried to tell Meyers this, but Meyers would not listen.

Nonetheless, on both May 31 and June 1, 2017, the plaintiff tried to pray in

the cell, but he could not do something that he knew was wrong. <u>Id.</u> at 4. On

June 2, 3 and 4, the plaintiff tried to contact the chaplain, defendant Konrad.

As of the day he filed his complaint, he was still waiting to hear from her. <u>Id.</u>

On June 4, he filed a grievance.

At 3:30 p.m. that day, defendant Higgins told the plaintiff that Higgins

could no longer allow the plaintiff to pray in the gym, per the orders of

defendant Mekash. <u>Id.</u> Later that evening, the plaintiff spoke with Mekash, who

told the plaintiff that he was not allowed to pray either in the gym or in the

dayroom, citing jail policy. <u>Id.</u> The plaintiff claims that there were thirteen rules

governing the day room, none of which prohibited prayer there. <u>Id.</u> at 4-5. He

says there were ten rules for the gym, one of which prohibited "private inmate

use." <u>Id.</u> at 5. The plaintiff says that he tried to explain to Mekash "about the

Catholics praying and taking communion in the gym," but Mekash again said

he had to follow jail policy. Id. Mekash also responded to the plaintiff's grievance, finding it unfounded and closing it out. Id.

On June 5, 2017, the plaintiff appealed the ruling on the grievance, explaining why he could not pray in his cell and expressing the view that he was experiencing prejudice; he asked to be allowed to pray in the gym. Id. Defendant Michel responded that she understood the plaintiff's frustration, but that he was not being denied his right to practice his religion. She said, "We do not allow Inmate led religion practices that is why you can not utilize the gym for praying." Id.

On June 6, between 3:20 and 3:40 p.m., the plaintiff got permission from Higgins to speak to Michel. Id. at 5-6. He asked Michel why he couldn't at least pray in the dayroom. Michel responded that the plaintiff had to pray in his room—the gym and dayroom were "off limits." Id. The plaintiff pointed out that because there was no Islamic chaplain at the jail, he had no choice but to lead himself in his religious practices. Michel responded that there were no inmate led religious practice allowed in the jail, "period." Id.

The plaintiff says that for ten days between May 31, 2017 and June 9, 2017, he was not allowed to pray correctly at the Brown County Jail. Id. He then was moved to the Outagamie County Jail due to overcrowding; he's been praying in the dayroom there ever since, without a problem. The plaintiff feels that Brown County moved him to the Outagamie County Jail to prevent him from arguing further about his religious rights. Id. He seeks money damages, and an order requiring the Brown County Jail to change its policies to "allow all

faiths to pray and meet in the gym like the Catholics do without reprisal." <u>Id.</u> at 7.

C.    <u>Discussion</u>

The plaintiff cannot sue the Brown County Jail under §1983; it is a part of Brown County, not a free-standing legal entity that can be sued in its own right. <u>Gambrell v. Brown Cty. Jail Health Servs.</u>, 2015 WL 6873229, at *2 (E.D. Wi. Nov. 9, 2015) (citing <u>Whiting v. Marathon Cty. Sherriff's Dep't</u>, 538 F.3d 763, 778 (7th Cir. 2008)) (holding that Brown County Jail is neither a "suable entit[y] under §1983" nor a "legal entit[y] separate from the county government and therefore not subject to suit"). For that reason, the court will dismiss Brown County as a defendant.

The only mention the plaintiff makes in his complaint about defendant Karen Konrad is that he made three requests to meet with her, but that as of the date of the complaint, he was still waiting. Dkt. No. 1 at 4. The plaintiff has not alleged that Konrad prohibited him from praying correctly, or played any role in telling him where he could and could not pray. It is not even clear whether Konrad knew that the plaintiff was trying to contact her. For a defendant to be liable for violating someone's civil rights under §1983, that defendant must have been personally involved in the alleged constitutional violation. <u>Colbert v. City of Chi.</u>, 851 F.3d 649, 657 (7th Cir. 2017) (quoting <u>Minix v. Canarecci</u>, 597 F.3d 824, 833 (7th Cir. 2010). The plaintiff has not demonstrated that Konrad was personally involved in any alleged violations of the constitution or law, and the court will dismiss her as a defendant.

The plaintiff alleges that the remaining defendants violated his right to practice his religion appropriately. "Prisoners retain the right to exercise their religious beliefs, although that right is not unfettered." Ortiz v. Downey, 561 F.3d 664, 669 (7th Cir. 2009) (citations omitted). "Prison officials may restrict inmate's ability to practice his faith so long as the restriction is reasonably related to a legitimate penological interest." Id. (citing Turner v. Safley, 482 U.S. 78, 89 (1987)). In deciding whether a prison's restriction on an inmate's religious practices reasonably relates to a legitimate penological interest, courts look at things like whether the restriction is legitimately related to a neutral government objective, whether the inmate has alternative means of exercising his faith, whether the accommodation for the inmate will impact prison staff and other inmates and whether there are alternatives to the restriction. Id. (citing Lindell v. Frank, 377 F.3d 655, 657 (7th Cir. 2004)).

The court finds that the plaintiff has alleged sufficient facts to allow him to proceed on a claim that Michel, Mekash, Meyers and Higgins unreasonably restricted his right to exercise his faith. None of them addressed his concerns about the fact that praying in his cell was unclean, or gave him a reasonable explanation for a policy that would prohibit him from praying in the gym or the dayroom.

The plaintiff also asserts that he believes that the defendants were discriminating against him, presumably based on his faith. The Fourteenth Amendment prohibits states from denying people equal protection under the law; if a government action interferes with a person's freedom of religion, courts

review the constitutionality of that action under a "heightened scrutiny" standard. <u>Vision Church v. Vill. of Long Grove</u>, 468 F.3d 975, 1000 (7th Cir. 2006) (citation omitted). At this early stage, the plaintiff has alleged sufficient facts to allow him to proceed on a claim that Michel, Mekash, Meyers and Higgins treated him differently than members of other faiths, with no legitimate reason.

Finally, the court is aware that the plaintiff has written to the clerk to ask why it has taken the court so long to screen his case. The court has no excuse—only an explanation. The court's caseload is heavy, and the district has been short one judge for almost two years. The court is behind on many cases; it wishes that it were not. It hopes this order will move the plaintiff's case along.

## III.    Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepayment of the filing fee. Dkt. No. 2.

The court **DISMISSES** defendants Brown County Jail and Karen Konrad.

The court **ORDERS** the United States Marshal to serve a copy of the complaint and this order on defendants Michel, Mekash, Meyers and Higgins under Federal Rule of Civil Procedure 4. Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). Although Congress requires the court to order service by the U.S. Marshals Service precisely

8

because plaintiffs like this one are indigent, it has not made any provision for these fees to be waived either by the court or by the U.S. Marshals Service. The U.S. Marshals will give the plaintiff information on how to make payment for service. The court is not involved in collection of the fee.

The court **ORDERS** that defendants Michel, Mekash, Meyers and Higgins shall file a responsive pleading to the complaint.

The court **ORDERS** that the Outagamie County Sheriff shall collect from the plaintiff's prison trust account the $325.00 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the clerk of the court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The Sheriff shall clearly identify the payments identified by the case name and number.

Along with this order, the court is sending the plaintiff a copy of Answers to Prisoner Litigants' Common Questions; he may find this helpful as he moves forward with his case.

The court will mail a copy of this order to the Outagamie County Sheriff.

The court **ORDERS** that the parties shall not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

The court **ORDERS** that the plaintiff shall submit all correspondence and legal material to:

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS.
It will only delay the processing of the case. Because each filing will be
electronically scanned and entered on the docket upon receipt by the clerk, the
plaintiff need not mail copies to the defendants. All defendants will be served
electronically through the court's electronic case filing system. The plaintiff
should, however, keep a personal copy of each document filed with the court.

The court advises the plaintiff that if he does not file documents or take
other court-ordered actions by the dates the court sets, the court may dismiss
his case for failure to prosecute.

The parties shall notify the Clerk of Court of any change of address.
Failure to do so could result in orders or other information not being timely
delivered, which could affect the legal rights of the parties.

Dated at Milwaukee, Wisconsin this 15th day of June, 2018.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**